The next case for argument is 23-1042, Textron Aviation v. United States. Good morning. Please proceed. Good morning. May it please the Court. William Peterson on behalf of the appellant, Textron Aviation Defense. The Court of Federal Claims erred in two ways in holding that Textron's claim was barred by limitations. First, it applied the wrong test to distinguish between non-routine requests for payment, which can be asserted as claims immediately, and routine requests, which can be asserted as claims only after being disputed by the government. Under the correct test for a non-routine request, whether Textron was injured by unexpected or unforeseen government activity? Your Honor. I'm just waiting to hear what was wrong about the test. The test, the correct test, is whether the contractor has been injured by unforeseen or unexpected government activity, essentially akin to a breach of contract. So can you point us to, I mean, the Court of Federal Claims judge did a very detailed, clear analysis of, I think, every case that the sides and more that the sides gave, and he has a very detailed discussion. He doesn't, he's not stating tests. He's really drawing everything he says from the cases. So can you point us to where in the opinion he reaches a conclusion that you say is contrary to, I guess you haven't yet told us which cases it's contrary to. Yes, Your Honor. So we're dealing with a relatively constrained universe of cases discussing the difference between routine and non-routine requests. I look at four cases. There's the Reflectome decision. There's James M. Ellett Construction Company. Yeah, and he discusses, he's the one that you're working on with Appendix 18, 19. Yes. He has quite a detailed discussion about this routine and non-routine. That's correct. And I look at Appendix page 22. So the two key cases from our perspective are Parsons, which we think the District, the Court of Federal Claims certainly grappled with, but we think the Court of Federal Claims was wrong about, and KBR, which also discusses the difference between routine and non-routine requests, but isn't discussed in this portion of the Court of Federal Claims opinion. So KBR is the case that links routine versus non-routine requests to accrual under the Contract Disputes Act. And KBR rejects. I'm still having trouble. You believe the trial court was wrong in using electric boat? What's the exact fault line? So, Your Honor, if you look, it is specifically Appendix page 22. The critical question, and I'm alighting, this is Appendix page 22. This is in the second full paragraph. The critical question, and I'm alighting somewhat, is whether the payment seeks compensation because of unforeseen or unintended circumstances. And it cites ELLIT for that. It cites ELLIT for that. Now, ELLIT cited Reflectone for that proposition. When you look in Reflectone at the list of unforeseen and unexpected circumstances, all of those in Reflectone involve unexpected government action that injured the contractor. And you see this in Parsons. And where does that test come from? It comes from Parsons, doesn't it? It comes from Parsons. Okay, so what is the test in Parsons? Do you have Parsons there? Yes, Your Honor, I certainly do. Parsons asks, Parsons notes specifically that 1171 in the agenda. Well, Your Honor, I'm looking specifically at 1171. As a result of intervening unforeseen circumstances for government action. And, Your Honor, am I correct? Did I read it right? As a result of intervening unforeseen circumstances for government action. And, Your Honor, I'm looking for the precise language. What I'm looking at is 1171 is not the result of intervening unforeseen circumstances for government action. Meaning there are two categories. There are unforeseen intervening circumstances and there's government action. Yes, Your Honor, but let me go back a couple of... Do you see what I'm... I see that, but let me try... If Parsons isn't limited to only unforeseen actions as a result of government action, then why was the court wrong to end this case? Because the facts of our case are actually somewhat similar to Parsons. Stick with me. Because unforeseen circumstances... Because under that analysis, then there's injury, as there was injury, right? Not quite, Your Honor. So unforeseen circumstances has to be understood in the context of Parsons. So keep in mind, Parsons involved acts that were, if you just take the common meaning of the phrase unforeseen, Parsons involved billing mistakes. Parsons didn't involve what one would ordinarily think of the way a contract is supposed to work. So what this court looked at in Parsons is said, and I'm looking specifically, was Parsons requesting costs because of additional or unforeseen work at the government's behest.  So what Parsons said is when the contractor is requesting money for work that was under the contract... Well, the facts and circumstances of all these cases are different, and the law says whether or not it's routine or non-routine will depend on the facts and circumstances, right? Well, that's right. But fundamentally what Reflectone tells us is a routine request is looking for money under the contract in accordance with the scheduled course of contractual progression. A non-routine request is essentially akin to a breach of contract. It is outside the contract. So what a CAS 413 calculation is doing is it is verifying whether the right amount was previously put in to define benefit pension plans. So contributions to define benefit pension plans are made based on actuarial estimates. You're trying to estimate the amount of money that you need to put in. Why did Textron wait until 2018 to submit a CAS 413 adjustment request to the government? Your Honor, these were complex calculations, and it's not in the record, but there were ongoing negotiations with the government this entire time. Could it, in your view, based on your test, it seems to me that if you fast forward two years, if you didn't come in in 2018 under your test, you could come in in 2028 for the first time and make this request, or in 2038. Are there any limits to your test in terms of you having complete control over when this action proceeds? So, Your Honor, I think this is where the Strategic Technologies Institute's case we call the 28J letter on is helpful. It does point out that if the government believes that the contractor isn't submitting these sorts of routine requests when it should, then the government has tools available to it. So there are going to be some ability for the government to come in and perhaps assert a claim against a contractor. Okay. Okay. And, of course, you kind of waved in there that these are routine requests, and that's obviously the heart of the dispute here, so I'll take that off the table. But what's the answer to the question? You know what this case is and what this request is. Let's not call it routine or not. Yes, Your Honor. Could they come in in 2028 for the first time? We think that... Yes or no? So, yes, Your Honor, with respect to Section 7103, the statute of limitations here. The government may have other... That's what this case is. Your answer to me is yes. You could come in in 2020. You could have come in the first time in 2028. You could come in in 2038 for the first time, and that's the way the system ought to work under the statute of limitations. Your clock doesn't start to run until you come in. So two answers, Your Honor, which is there are two different periods you need to think about. One is the period of time in which the contractor is required to submit the request to the government. There are... That's six years. No, Your Honor, that's seven. So if you look, for example, at the KBR case... Are you trying to get away from the Johnny Goodrich line of questioning? No, I'm trying to distinguish... Where are you going? So let me try to give you my view of the world, which is that a contractor has to submit a request to the government which has to be disputed before there can be a claim that is asserted. So there may be periods of time in which the contractor has to submit that request. So KBR, for example, talks about FAR 52.216. There's no time limit on that. There's no time limit. Well, except now you're leaping towards... We're trying to stay away from... I mean, another clear issue decided by the district court here was differentiating KBR, but it was on your argument that you needed a claim submission procedure. And so he got rid of a distance KBR based on that issue. So KBR isn't really helpful. If we buy what the district court said about KBR, then that's a different issue. It is, but KBR also addressed the routine and non-routine distinction. KBR does clearly... There's language in the background. Well, it's not just language in the background. KBR expressly rejected the decision below. As we pointed out, the government argued the test applied by the Court of Federal Claims in KBR. In that case, the government said a payment request is non-routine simply if it seeks compensation because of unforeseen or unattended circumstances. That's page 11 of its appellee's brief. The government lost that in KBR. This court held that the whole point of a non-routine request is that a contractor that has been injured by unexpected or unforeseen action on the government's part may seek immediate payment support. What was injury in this case? You just mentioned injured. I want to follow up on that. Well, if you look at the claims that we actually asserted in the Court of Federal Claims, our theory is we were injured when the government breached the contract and refused to pay the request, refused to make the adjustment that we requested. That's after you made your claim. Yes. Now, that claim may... After you made a CDA claim. The claim was based on the fact that the government owed you this money as of what? Our theory was that the government owed us the money when we requested it. You're not asking for any interest dating back to 2012 or 2013? No, Your Honor. We're certainly not. And part of the CDA claim, if you look in the record, is a CDA claim for a breach of contract that occurred after the government refused to pay in response to our letter request. Could we come back to the routine versus non-routine issue? If we were to, after considering all your arguments, to decide that the Court of Federal Claims used the correct legal analysis to decide whether this was routine or non-routine, so that there's no argument over what standard being used, then the decision as to routine or non-routine is a fact question from the Parsons, correct? Parsons says it's a fact question. You think it's dependent on the circumstances? No, I'm just saying, we're not totally certain. The facts are part of the circumstances, but if the legal test was correct, then the decision is a big decision on the fact issue to which we owe deference to the trial fact, correct? If the legal test was correct, Your Honor, yes. Thank you. But let me turn back just briefly. So, two things. The nature of... Your Honor, Judge Prost, let me tell you a question about the timing. The rule that we're advocating for is one that would apply both to the government and to the contractor. So, Judge Prost, assume that you're correct. Assume that we waited until 2020 or 2023 to submit these calculations, and the calculations, rather than showing that we had a... We waited until 2050. Assume that we waited, but assume that we had a pension surplus instead of a deficit. In those circumstances, we would owe money to the government. I think it would be absurd to suggest that the government's claim against the contractor for that surplus would be untimely because the contractor didn't provide calculations to the government earlier. The government's claim for that surplus would accrue at the time the contractor says, here's a surplus that I'm not going to pay. Well, there are certainly other reasons why we have statute of limitations, and one of them is for scaleness. I mean, if we're talking about 2050, I mean, I know there's a lot of record-keeping going on, but doesn't it make any sense to you that these cases could go on in perpetuity and that you could have complete control over when to assert your claim, and there's no... Effectively, your test has no statute of limitations for you. Well, Judge Prost, I'm suggesting there are two different inquiries. The first is, when did we have to submit this CAS 413 submission to the government asking for this money, providing it with the calculations? And I'm saying that is a different inquiry from the six-year statute of limitations that happens afterwards. So the government is perfectly free in this case on remand. Why is it different? So, Your Honor, again, I'd point you to the KBR decision. That involved, for example, final indirect costs. It deals with this issue of indefinite claim accrual, and it's exactly the same thing. The government made the same arguments there. KBR pointed out there are regulatory restrictions on when we're allowed to request these costs. That's a different inquiry than claim approval. And you made that argument, and you lost it, and you didn't appeal it. The preexisting routine of KBR probably. Well, we didn't argue it as a mandatory claim submission procedure on appeal, but we have certainly preserved and argued the difference between routine and non-routine claims. And finally, Your Honor, I... Okay, in the court study KBR, KBR could not have calculated the requirement of some certain for its claim, a contention that the government was unable to use. Did you put out evidence in this record why you could not have calculated, made all of these calculations between 2012 and 2018? We did not put on that evidence, but, Your Honor, we believe it's the government's burden. It's an affirmative defense the government needed to prove. The government did not submit evidence in this record showing as a matter of law when we knew or should have known this uncertain. So we think even if we're wrong about the routine versus non-routine request, it would be necessary to reverse the summary judgment on that ground. Okay. May it please the court. The trial court correctly recognized that text... Could we just start? I'm sorry, because I'll forget this. They submitted the 28J, as your friend just mentioned, a few minutes ago on Friday, and I don't think the government responded, obviously because they didn't have enough time. But do you have any response to the... I assume you don't agree with your friend that the case that he submitted on 28J, if my name escapes me, is really relevant to this case. So could you speak to that? That's correct, and I'm happy to address that case. That's the STI case, and actually I think that case contradicts a point that counsel for Textron made just now about how it would apply if the government only received the calculations years later. That case, STI shows, that the application of the facts of that sort of situation, when the government only receives it later, is that's when the government's statute of limitations starts, when the accrual starts in the government, when they get the information. That's what happened in that case, that the accrual occurred when the belated submission was actually given to the government to review that had the incorrect information in it. That's not the case for the contractor. The contractor not only has the information, it's their information, they have a preexisting obligation to do the calculation upon the triggering event, which is the termination or curtailment of the pension plan. So when these pension plans were terminated or curtailed, effective December 31, 2012, and the only wrinkle in this case being that there was a bankruptcy proceeding, but that was all over by February 15, 2013, when those pension plans were terminated or curtailed way back when, Textron had, its predecessor, had an obligation at that time to do the calculation to determine is there a surplus or a deficit. Well, actually, you're being a little too generous or the reverse. They had six years to do those calculations. They didn't have an obligation to do it in five minutes or in five months. They have a six-year statute of limitations, which is not nothing. Absolutely. So under the Gates v. Raytheon case, there's a clear rule that this applies in the period when the termination occurs. But not only that, exactly right, the whole point of this generous six-year statute of limitations is that it gives either side plenty of time to decide when to pursue its claim within those six years, to prepare its claim with as much time as it wants. And so it's never expected that the claimant will, you know, the minute their claim accrues, have their claim prepared. Of course there will be time, but that's for them to decide. The government has to do the same thing. The government gets six years from when the events that the liability is based on occurred and were known. Each side gets six years from that point to prepare its claim and submit its claim. How would you describe the injury in this case? The opposing counsel gave one description. Do you have a differing description of the injury? Under electric boat, it's clear. The injury is if the government owes you money and you don't have it, for these purposes, that's your injury. So just like in electric boat, it's not when the government refuses to pay you. That's not your injury. You have a right to money under the contract provisions. This case is CAS 413. When you're owed that and don't have it, for these purposes, you have an injury that you can pursue in a claim. So what would happen if under this pension thing that was resolved, they owed you money? They owed the government money. So then the injury is to the government. It's not to them, right? Exactly. When the government is owed money and doesn't have it, then the statute of limitations accrues. The exception might be if the government doesn't know. If the contractor hasn't met its obligation to say, government, I've done my calculation and here's the result, well, then the accrual might not happen until there's knowledge or should be knowledge. Can I ask you just, I thought the, as I said earlier, I thought the Court of Federal Claims' opinion was quite helpful, clear, Tarsy going through, and I guess they were directing themselves to the questions, the arguments raised below, and going through the cases in detail. Your brief seems to be a little different. I mean, you ultimately reach the routine, non-routine sort of at the end of the brief. Does the government have any difference with anything that the district court said with respect to the case law, et cetera? Does the government disagree with any of the court's analysis, the relevant analysis, and its discussion and interpretation and application of the cases? Right. There is a little bit of a difference, both below and here in this court. It's our position that Textron establishing that this is routine is not a way to avoid the statute of limitations. We don't think it's correct that, certainly, if you reach and decide that this depends on routine versus non-routine, we agree with the Court of Federal Claims' analysis in that regard. However, we don't think it's right to take this routine versus non-routine concept and apply it to claim accrual, to statute of limitations. We think these are separate concepts. And to explain that. Is there any case that's parsed it out the way you're parsing it out? Because it seems like our cases have supported the way the district court viewed this routine, non-routine differentiation. I think that there is the ability to look at cases and say this seems to suggest that the routine versus non-routine matters. However, I don't think any case for this. Aren't you pushing it against KBR a little bit? Well, consider what was actually decided in KBR. I know what was decided. The way Virginia did it. I think that's true. It looked to me like you were pushing it. The part of KBR that you're adversarial was elevated. And I said, no, no, no. KBR is a pre-existing condition case, yada, yada. So I think what you're suggesting is that that language in KBR up front talking about routine, non-routine, accrual is what you think is wrong. I agree. And first and foremost, telling you what I think is right. And I think going back to Reflectone, to say that the routine versus non-routine distinction is something that bears upon claim accrual isn't quite right. I think the routine versus non-routine distinction is something that bears upon did the contractor submit a valid claim, the presentment requirement. Did what they actually submit is that,  It doesn't create some rule whereby the contractor is not allowed to submit some category of claims in a non-routine claim letter whenever it wants. I mean, if that's the law, I think the government would start moving to dismiss a lot of cases that we haven't because we would be looking, oh, is this, okay, you've got a claim letter here, non-routine, totally valid. But this seems like a routine matter. How do you know when you've got the letter, whether it's routine or not? If you've got a letter with a claim certification on it, it's a non-routine submission. It's not an invoice. It's not a voucher. It's got a certification. Right. Because the certification has a CDA requirement. For claims over $100,000, absolutely. And the point that, you know, when you look at the regulation, the definition of claim, all that certification makes it routine? Non-routine. Why? This is not an invoice. So there are examples in the regulation. Why? I mean, you have a claim for some payment of money, right? And if you're a contractor and you're submitting it to a contracting officer and you've read the CDA and it says you've got to certify it to make it a claim, it's your claim. Why does that make it routine or non-routine? So let me start with where routine versus non-routine comes from. It comes from the definition in the regulation, part 2.101, that says a routine, it describes routine, an invoice, voucher, or other routine submission. A routine, not in dispute. I'm sorry, your honor? They're saying a routine, not in dispute. That's the exact way. So the language about halfway through that part 2.101 definition of claim says, a voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. And as explained in Reflecto, the point of saying that is, if you looked at the beginning of that definition of a claim, an invoice could technically fit in. But a contracting officer receiving an invoice is not going to say, they're asking me for a final decision under the CDA. They're not going to recognize that kind of submission as that. It's just an invoice. So it will be processed under normal invoice requirements. But when a contracting officer receives a demand, it's not an invoice or a voucher, but rather has this claim certification and indicates a final decision is being requested, the contracting officer knows they are asking me for a final decision. I mean, I guess the problem I'm having is, you know, we have a lot of hard cases and we have a lot of work to do. We've got, I mean, the district court based its findings and the relevance of routine and non-return routine on a slew of our cases. So are you suggesting here that we take these cases unmarked and reverse our precedent, which I think supports the analysis that the District Court, that the Court of Federal Claims did here on routine versus non-routine? I don't think that's necessary because I think that Textron is asking for an extension of what's said in those cases beyond anything that was decided. I agree with that, but that doesn't, that's not kind of the gravamen of what we were talking about in terms of the government suggesting that the routine, non-routine differentiation that comes out of Reflectone and Electric and Parsons, I think, and maybe a few others, and what the Court of Federal Claims said here was offense. Well, I think Parsons and KBR are their two main cases, as counsel for Textron said. And when you look at what happened in both those cases and then whether it would require this court to not follow those cases, in neither case is that true. In KBR, the whole thing... Well, KBR is kind of off the table for maybe other reasons, but I'm talking about all the cases that the Court of Federal Claims relied on. And certainly there's no question that there's a lot of cases that discuss routine versus non-routine, but is there any case that says if you have a routine claim, you're not allowed to present to the contracting officer whenever you want a non-routine claim, so even if you have some, is there really support for this idea that it's not the form of what the contractor is submitting, but rather some whole bucket of claims, normal claims under the contract, where the contractor just doesn't... Well, we're here to ask the questions, not to answer them. And let me answer. Reflectone en banc says that's not right. That's how I think I and almost everybody read Reflectone. The contractor can submit the claim when the contractor wants to. There is no prerequisite to the prerequisite of submitting the claim. Do you agree that we do not need to decide whether or not this routine versus non-routine and the applicability to the statute of limitations issue in order to decide potentially in your favor in this case? Yes, that's true. The court could certainly say, as we say in our brief, that even if this is the law, that the trial court is correct, that this would not properly be described as routine. The problem, I think, is just that it would add another case to what I think is a divergence of this routine versus non-routine away from just the question of was there adequate presentment into other areas where I don't think it's right. You're just arguing against yourself because if you're complaining and worried that it would add another case, that goes to my suggestion that we've got cases that already say that and we're not going to overrule them in this context. And again, I don't think you'd be overruling them to agree with us. I think the cases don't actually have holdings that are contradictory to our argument. But certainly, to reverse the case, the court would not only have to agree with text drawn on the law, which is this case, but also conclude that the trial court was wrong to say that this is not a routine claim. And there's a variety of reasons why, as we point out briefly, at least in our brief, even if it's true that a routine claim is some category of claims that can't be pursued immediately, that wouldn't allow Textron's case here to proceed. First, as the trial court explained, this CAS 413 adjustment with the termination of a pension plan is not a routine claim. Many cases from this court point out this is unusual.  as we identify in the brief. Second, even if that's true, it's just more steps that Textron needed to complete within that generous six-year statute of limitations. Even if they had to have a dispute with the government first, then, after they have the dispute, then they can bring their claim to this. That just means they have more to do within the six years. And finally, even if there was some requirement to get into a dispute with the government before the claim was submitted, the entity that's before the court here, the appellant, the contractor, Textron Aviation Defense, that subsidiary, didn't do that. The letter from 2018... So you're running short on time. Do you want to talk at all about, I thought, one of your arguments that maybe was pretty convincing about the policy concerns, and I think you said ability to wait 100 years on statute of limitations. Do you want to address that at all before you sit? Absolutely. I mean, under Textron's reasoning, there would be no statute of limitations in effect. The contractor would just decide when it wants to get into a dispute. Take an example of a very routine situation. A contractor has an invoice for work that was done. There's no dispute about it at all, but the contractor waits eight years to submit that invoice. And then the government says, this is very old, I'm not paying this. And the contractor says, well, now we've got a dispute, so I want my money. No, that is barred by the statute of limitations. That's the most routine thing you can think of, and that is clearly barred by the statute of limitations. So there's no separate statute of limitations for complicated claims or simple claims. It's six years for everything, and there's no ability for the contractor to unilaterally, by saying, well, I have a lot of work to do on my own calculations, to put it off until some time of the contractor's choosing. Reflecton makes clear the contractor can decide when to submit its claim, and in this case, Textron failed to submit its claim within the six years in the trial court directly. The real difference between the two of you is picking the date on which the claim occurs. Right? True. They say it occurs when the government has disagreed with us, and you're saying, no, no, no. It occurs when, under the facts and circumstances, the contractor looks at this and says, hey, I've got a right to pay you. Exactly. Thank you. We'll restart two minutes every five minutes. Thank you, Your Honor. Very quickly, my friend asked about cases holding that routine claims must be in dispute before they can be asserted. I point him to James M. Ellett Construction Company and Parsons itself, even if he and I read Reflecton differently. Both of those clearly indicate that this dispute is a requirement for the assertion of claims based on routine requests, which triggers the statute of limitations. A quick comparison with Parsons. Yes, Your Honor. What we're doing with the CAS 413 submission is we're looking to see whether the estimates of pension contributions previously made were correct. So we are going back and saying, we made some estimates. At the time of this calculation, we have to say, how do the actual liabilities compare to the actual amounts? When you have a surplus, it means the amount that you were estimating was too high. In other words, you were overcharging the government. You need to give some of that money back. When you have a deficit, what it means is the amount you were charging the government for the work performed under the contracts for the work previously performed was too low, so you need to ask for more money from the government. These are the same facts as Parsons. What Parsons said was asking for additional money based on billing errors or any other reason for work that you already performed is a routine request, and that can't be submitted as a claim until it's disputed by the government. And then in KBR, the board looked at it and said, these are unforeseen circumstances. This court held that's a misapplication of so-called non-routine requests. We have the statement in KBR that the origin of the rule of non-routine requests is to permit a contractor that has been injured by unexpected or unforeseen action on the government's part to seek those damages immediately. The government in KBR said no, anything unexpected gives rise to a non-routine request. This court rejected that and held that it has to be based on unexpected or unforeseen government action. When you look at Parsons... Well, but look at Parsons. Parsons involved something unforeseen. Parsons involved unexpected billing errors. This is not normal. This is not something that ordinarily happens. But Parsons said, you're asking for money based on work that you were supposed to perform under the contract. This isn't about a different scope of contract. This isn't the government charging you additional money like an electric boat. This is just, you wanted more money that you were already owed. Please pay it to us. That's a routine request we'd approve. Also note, my friend didn't say anything about the sum certain, and we do think that is an independent ground for reversal, just given the fact that there's no evidence here about when we knew or when a reasonable contractor should have known the sum certain that we were owed, which is a requirement for claim approval. Thank you. We thank both sides for their testimony.